UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK GROVER, #439559,

    Plaintiff,                                       Hon. Robert J. Jonker

v.                                                         Case No. 1:21-cv-252

TRACI LANGE, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Partial Summary Judgment. (ECF No. 15). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted.

## BACKGROUND

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC). The events giving rise to this action occurred at the Oaks Correctional Facility (ECF). Plaintiff initiated this action against the following individuals: (1) Traci Lange; (2) Sergeant O'Brien; (3) Sergeant Johnson; (4) Sergeant Stone; (5) Corrections Officer Nalley; (6) Corrections Officer Morrow; and (7) Corrections Officer Clem. In his complaint, (ECF No. 1), Plaintiff alleges the following.

-1-

In September 2019, Defendant Lange began working in Plaintiff's housing unit. Soon thereafter, Lange approached Plaintiff and commented favorably on his physique. Lange told Plaintiff "that he needed a woman like her and that she could pull strings to get him home." Plaintiff was "uncomfortable with [Lange's] interest and tried to distance himself from her." Lange later began "blowing [Plaintiff] kisses" during rounds. Lange also wrote Plaintiff letters in which she stated "she wanted to have sex with [Plaintiff] and wanted to explore sex in every way with him."

While making rounds, Lange "would ask Plaintiff to show her his private parts." On "multiple" occasions, Lange "would take [Plaintiff] into a closet, or other places, where there were no cameras and have sex with him." Lange told Plaintiff that "she would claim rape if he stopped having sex with her" and that "she had friends in the facility that would make his life miserable if he stopped having sex with her." Lange also told Plaintiff that she "would put him in the hole if [he] stopped having sex with her or if he told anyone."

Plaintiff eventually began "paying inmates to write kites that [Plaintiff and Lange] were in a relationship." In June 2020, Lange resigned her position with the MDOC. On July 5, 2020, Plaintiff filed a complaint under the Prison Rape Elimination Act (PREA). Plaintiff was interviewed regarding his allegations on July 14, 2020. While this interview was supposed to be confidential, individuals he identified as having knowledge of Lange's conduct, including Defendants O'Brien, Johnson, Stone, Nalley, Morrow, and Clem, later "retaliated against him."

On August 18, 2020, Plaintiff hired an attorney to represent him in this matter "immediately" after which he "was retaliated against." Defendant Nalley told Plaintiff to "let it go or he wouldn't be going home and there would be other problems for him." Plaintiff "ignored" this instruction and "the next day a knife, which was planted, was found in his room by Defendants Stone and Johnson." As a result, Plaintiff was placed in segregation. Stone also "threatened [Plaintiff's] life if he pursued an action against Defendant Lange." An investigation of Plaintiff's PREA complaint concluded that "there was insufficient evidence to support [Plaintiff's] claims."

Plaintiff alleges that Defendants violated his Eighth Amendment rights to be free from cruel and unusual punishment. Plaintiff also alleges that Defendants O'Brien, Johnson, Stone, Nalley, Morrow, and Clem violated his First Amendment right to be free from unlawful retaliation. Defendants O'Brien, Johnson, Stone, Nalley, Morrow, and Clem now move for partial summary judgment.[1] Plaintiff has responded to Defendants' motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is "material" depends on "whether

---

[1] As detailed below, service has been effected on Defendant Lange, but she has failed to respond to Plaintiff's complaint. In response, Plaintiff has neither moved for entry of default nor taken any other action to prosecute his claims against Lange.

-3-

its resolution might affect the outcome of the case." *Harden v. Hillman*, - - - F.3d - - -, 2021 WL 1257802 at *4 (6th Cir., Apr. 6, 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 2021 WL 1257802 at *4.

## ANALYSIS

### I. Exhaustion Standard and Plaintiff's Grievances

Defendants O'Brien, Johnson, Stone, Nalley, Morrow, and Clem argue that the following claims must be dismissed for failure to properly exhaust administrative remedies: (1) all Eighth Amendment failure to protect claims and (2) First Amendment retaliation claims against Defendants O'Brien, Morrow, and Clem. Defendants concede that Plaintiff has exhausted his retaliation claims against Defendants Johnson, Stone, and Nalley.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Ibid*.

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner must attempt to resolve the issue with staff, unless prevented by circumstances beyond his control, or the issue falls within the jurisdiction of Internal Affairs. MDOC Policy Directive 03.02.130 ¶ P (July 9, 2007); MDOC Policy Directive 03.02.130 ¶ Q (Mar. 18, 2019). The prisoner must attempt to resolve the matter within two days of becoming aware that there exists a grievable issue. (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff. MDOC Policy Directive 03.02.130 ¶ W (Mar. 18, 2019). The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. MDOC Policy Directive 03.02.130 ¶ DD (Mar. 18, 2019). If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. MDOC Policy Directive 03.02.130 ¶ HH (Mar. 18, 2019). The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of their motion, Defendants have submitted evidence that Plaintiff, prior to initiating this lawsuit, pursued three grievances through all three steps of the prison grievance process. (ECF No. 17-3, PageID.76-90).

A.    Grievance ECF 20-10-1288-28e

Plaintiff filed this grievance on October 10, 2020, alleging that his kites requesting medical treatment were being ignored. (ECF No. 17-3, PageID.80). Plaintiff pursued this grievance through all three steps of the grievance process. (*Id.*, PageID.78-80). However, because this grievance does not concern any of the matters alleged in Plaintiff's complaint, it does not serve to exhaust any of Plaintiff's current claims.

B.   Grievance ECF 20-08-1073-17a

Plaintiff filed this grievance on August 27, 2020, alleging that Defendants Johnson and Stone retaliated against him for making sexual assault allegations against Lange and pursuing legal action. (ECF No. 17-3, PageID.84). Specifically, Plaintiff alleged that Johnson and Stone told him that if he did not "let it go," they would falsely charge him with possession of a knife. (*Id.*). Plaintiff pursued this grievance through all three steps. (*Id.*, PageID.81-85). Accordingly, this grievance properly exhausts Plaintiff's claims that Defendants Johnson and Stone retaliated against him by falsely charging him with possession of a knife.

C.   Grievance 20-08-1074-17a

Plaintiff filed this grievance on August 26, 2020, alleging that Defendant Nalley retaliated against him for making sexual assault allegations against Lange and pursuing legal action. (ECF No. 17-3, PageID.89). Specifically, Plaintiff alleged that Nalley stated that "if [Plaintiff] wanted to go home," he would stop pursuing his allegations against Lange. (*Id.*). Plaintiff refused and was falsely charged the next day with possession of a knife. (*Id.*). Plaintiff pursued this grievance through all three steps. (*Id.*, PageID.86-90). Accordingly, this grievance properly exhausts Plaintiff's claim that Defendant Nalley retaliated against him by improperly threatening him with physical harm and/or lengthier incarceration.

Plaintiff has presented no evidence that he pursued any additional grievances or that his attempts to pursue additional grievances was in any way restricted or impaired.

## II. Eighth Amendment Claims

In his complaint, Plaintiff alleges that Defendant Lange violated his Eighth Amendment rights by "exhibiting deliberate indifference to his health and safety by repeatedly sexually assaulting him and threatening him with reprisals if he did not cooperate." Plaintiff further alleges that Defendants O'Brien, Johnson, Stone, Nalley, Morrow, and Clem violated his Eighth Amendment rights by exhibiting deliberate indifference to the "substantial risk that Plaintiff would be serious[ly] harmed" by Defendant Lange's conduct.

### A. Defendants Stone, Johnson, and Nalley

To understand why Plaintiff has failed to properly exhaust his Eighth Amendment claims against these Defendants, a brief discussion of the MDOC's requirements for reporting sexual misconduct is first necessary.

The MDOC requires prisoners to exhaust claims of sexual misconduct differently than other claims or complaints. Specifically, prisoners are instructed that allegations of sexual abuse "shall not be processed as grievances under [the MDOC's general grievance] policy but shall be reported in accordance with [Policy Directive] 03.03.140" concerning PREA and sexual misconduct. MDOC Policy Directive 03.02.130 ¶ D (effective Mar. 18, 2019). The MDOC's PREA Policy Directive provides that allegations of sexual abuse, as defined by the policy, must be pursued "through both steps of the

-9-

PREA grievance process." MDOC Policy Directive 03.03.140 ¶ EE (effective Apr. 24, 2017).[2] This Policy further provides that only allegations of sexual misconduct can be reported via the two-step PREA grievance process. *Id.* at ¶ II. All other claims must be reported pursuant to the MDOC's familiar three-step grievance process. *Id.*

Plaintiff alleges that Defendants Stone, Johnson, and Nalley violated his Eighth Amendment rights by failing to protect him from Defendant Lange's advances. Pursuant to the Policies discussed immediately above, Plaintiff was required to report these claims via the MDOC's "normal" three-step grievance process. As noted, however, Plaintiff failed to comply with this requirement. Plaintiff does not dispute this, but instead argues that because these claims were investigated during the investigation of his PREA allegations against Defendant Lange, Defendants cannot now argue that he failed to properly exhaust these claims. The Court is not persuaded.

In support of his argument, Plaintiff cites to *Does 8-10 v. Snyder*, 945 F.3d 951 (6th Cir. 2019). In *Does*, the plaintiffs, alleging they were sexually assaulted by other prisoners, pursued § 1983 claims against the Governor "and a host of other state officials and prison wardens." *Id.* at 955. The plaintiffs' claims were dismissed by the district court for failure to exhaust administrative remedies. *Id.* at 961. On appeal, the question before the Sixth Circuit was "which administrative process the Plaintiffs were

---

[2] MDOC Policy Directive 03.03.140 has undergone several recent revisions. The cited version took effect April 24, 2017, and was not superseded until April 5, 2021. Thus, this is the version of the Policy Directive applicable during the relevant time period. A copy of this Policy Directive is attached to ECF No. 35.

required to exhaust." *Ibid.* Specifically, were the plaintiffs required to utilize the "normal" MDOC three-step prison grievance process or were they instead required to pursue their claims through the MDOC's separate PREA grievance process.

The defendants argued that the plaintiffs were required to pursue their claims through the MDOC's "normal" three-step grievance process. *Id.* at 961. While this may have been correct, the court observed that the MDOC, instead of requiring the plaintiffs to utilize the "normal" grievance process instead "treated the Plaintiffs' complaints as PREA grievances" and addressed such on the merits. *Id.* at 961-62. Because the MDOC declined to enforce the requirement that the plaintiffs utilize the "normal" grievance process, but instead addressed their complaints as part of the PREA investigation process, the court concluded that the defendants could not later seek dismissal for failure to utilize the MDOC's "normal" grievance process. *Id.* at 961-62. As Plaintiff asserts, therefore, this Court should "treat inmate complaints in the same way the prison officials have treated them." *Id.* at 962. This principle, however, does not advance Plaintiff's position.

Defendants have presented unrefuted evidence that Plaintiff did not submit a PREA grievance against Defendant Lange. (ECF No. 36 at PageID.205-06). The PREA investigation concerning the possible sexual relationship between Lange and Plaintiff was initiated by the MDOC after it discovered that Plaintiff asked his sister "for assistance in finding an attorney to assist in a civil suit against MDOC for sexual assault allegedly committed by Lange." (ECF No. 36-1, PageID.205-06). Thus, this is not a

circumstance in which Plaintiff filed a grievance under the wrong MDOC provision only to have the MDOC disregard the error and address the merits of the grievance. If that were the case, Plaintiff's argument would have merit. Instead, Plaintiff simply failed to file a grievance under any provision regarding his allegations that Defendants failed to protect him from Defendant Lange's advances. As such, he has failed to properly exhaust his Eighth Amendment claims against these Defendants.

Plaintiff attempts to avoid this conclusion by arguing that "Defendants concede that Plaintiff exhausted his PREA complaint." (ECF No. 27, PageID.121). Defendants have made no such concession. Whether Plaintiff properly "exhausted his PREA complaint" is irrelevant to Plaintiff's claims against Stone, Johnson, and Nalley. As already discussed, such claims were not properly reported via a PREA grievance, but were required to be reported via the MDOC's general three-step grievance process. As Defendants Stone, Johnson, and Nalley have demonstrated, Plaintiff failed to properly exhaust his claims via this process. Accordingly, the undersigned recommends that Plaintiff's Eighth Amendment claims against Defendants Stone, Johnson, and Nalley be dismissed without prejudice for failure to properly exhaust administrative remedies.

In the alternative, the undersigned recommends that Plaintiff's Eighth Amendment claims against Defendants Stone, Johnson, and Nalley be dismissed for failure to state a claim on which relief may be granted.

Federal law provides that where a "prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," the Court "shall" dismiss any portion of the complaint which fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A. The allegations in Plaintiff's complaint regarding his Eighth Amendment claims against Stone, Johnson, and Nalley fail to state a claim.

A claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court has held, to avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a

> motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" – "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

To prevail on his failure to protect claims, Plaintiff must establish that Defendants were deliberately indifferent to "a substantial risk" that he might suffer "serious harm." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). To establish that a defendant acted with deliberate indifference, Plaintiff must demonstrate that the defendant was "subjectively aware of the risk," but failed "to take reasonable measures to abate it.'" *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 829, 847).

While Plaintiff's makes the conclusory allegation in his complaint that Defendants failed to protect him from Defendant Lange, he asserts no factual allegations that Defendants were actually aware of Lange's alleged conduct when such was occurring and could be stopped. Plaintiff alleges that Defendants subsequently retaliated against him for making sexual assault allegations against Lange and pursuing legal relief. However, by Plaintiff's own admission he did not make allegations against Lange until after she resigned from the MDOC by which time Plaintiff no longer required protection from her advances. Accordingly, the undersigned recommends, in the alternative, that

Plaintiff's Eighth Amendment claims against Defendants Stone, Johnson, and Nalley be dismissed for failure to state a claim on which relief may be granted.

### B. Defendants O'Brien, Morrow, and Clem

Plaintiff concedes that he has not properly exhausted his Eighth Amendment claims against Defendants O'Brien, Morrow, and Clem. (ECF No. 27, PageID.120). This is consistent with Defendants' evidence. Accordingly, the undersigned recommends that Plaintiff's Eighth Amendment claims against Defendants O'Brien, Morrow, and Clem be dismissed without prejudice for failure to exhaust administrative remedies. The undersigned further recommends, in the alternative, that these claims be dismissed for failure to state a claim for the same reasons articulated above.

### III. First Amendment Claims

Plaintiff alleges that Defendants Stone, Johnson, Nalley, O'Brien, Morrow, and Clem "retaliated against [him] for reporting Defendant Lange's conduct and for contacting an attorney." As already noted, Plaintiff has properly exhausted against Defendants Stone, Johnson, and Nalley the retaliation claims identified above.

Likewise, Defendants O'Brien, Morrow, and Clem have established that Plaintiff failed to properly exhaust any claim that they subjected him to unlawful retaliation. Plaintiff has not disputed this conclusion in response to the present motion. Accordingly, the undersigned recommends that Plaintiff's First Amendment retaliation claims against Defendants O'Brien, Morrow, and Clem be dismissed without prejudice for failure to properly exhaust administrative remedies.

In the alternative, the undersigned recommends that these claims be dismissed for failure to state a claim on which relief may be granted. In his compliant, Plaintiff advances the conclusion that O'Brien, Morrow, and Clem retaliated against him. Plaintiff fails, however, to allege any facts that would establish such claims. Thus, as to O'Brien, Morrow, and Clem, Plaintiff has failed to allege facts sufficient to state a claim for retaliation. *See Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010).

## IV. Defendant Lange

Plaintiff initiated this action on March 18, 2021, and effected service on Defendant Lange on or about July 15, 2021. (ECF No. 13). Defendant Lange's answer was due on August 5, 2021. More than six months have passed since Lange was served and she has not appeared, submitted an answer, or otherwise participated in this action. In response, however, Plaintiff has taken no action.

As the United States Supreme Court long ago recognized, "[t]he authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted." *Link v. Wabash Railroad Co.*, 370 U.S. 626, 629 (1962). This authority "is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Id.* at 629-30. Failure by a plaintiff to prosecute is a basis to dismiss the complaint, or any particular claims therein. *See* Fed. R. Civ. P. 41(b).

When examining whether dismissal for failure to prosecute is appropriate, the Court must consider the following factors: (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary is prejudiced by the party's dilatory conduct; (3) whether the party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered. *See Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*, 173 F.3d 988, 992 (6th Cir. 1999).

Plaintiff's conduct is certainly willful. Moreover, unnecessarily delaying prosecution of this matter likely prejudices Defendant Lange's ability to defendant against Plaintiff's claims. Considering Plaintiff's failure to prosecute his claims against Defendant Lange, the undersigned recommends that Plaintiff be ordered to properly move for entry of default and default judgment no later than 30 days from the date this recommendation is adopted. The undersigned further recommends that in the event Plaintiff fails to timely comply with this requirement, that Plaintiff's claims against Defendant Lange be dismissed with prejudice.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Partial Summary Judgment, (ECF No. 15), be granted and Plaintiff's claims against Defendants O'Brien, Johnson, Stone, Nalley, Morrow, and Clem be dismissed without prejudice for failure to exhaust administrative remedies save for the following claims: (1) Plaintiff's claim that Defendants Johnson and Stone retaliated against him

by falsely charging him with possession of a knife, and (2) Plaintiff's claim that Defendant Nalley retaliated against him by improperly threatening him with physical harm and/or lengthier incarceration.

The undersigned further recommends, in the alternative, that the following claims be dismissed for failure to state a claim on which relief may be granted: (1) Plaintiff's Eighth Amendment failure to protect claims against Defendants O'Brien, Morrow, Clem, Stone, Johnson, and Nalley, and (2) Plaintiff's First Amendment retaliation claims against Defendants O'Brien, Morrow, and Clem.

For the same reasons the undersigned makes these recommendations, the undersigned finds that an appeal of such would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: January 14, 2022        /s/ Phillip J. Green
                              PHILLIP J. GREEN
                              United States Magistrate Judge